ALBA NAT. BANK v. SHAW, Banking Com'r. (No. 3708.)

Court of Civil Appeals of Texas. Texarkana. June 12, 1929.

Rehearing Denied June 20, 1929.

Bozeman & Cathey, of Quitman, for appellant.

T. N. Jones, of Tyler, for appellee.

HODGES, J. In April, 1926, the First State Bank of Alba failed, and its affairs passed into the hands of Chas. O. Austin, then banking commissioner of Texas. As assessment of 100 per cent. of the par value of the shares of stock was made by him against the stockholders, for the purposes authorized by the statute. Some time later Austin filed this suit against J. L. Shoemaker, Jr., who appeared on the books of the insolvent bank as the owner of five shares of stock. Shoemaker answered alleging that he was not the owner of the stock at the time the bank failed, but had, in December prior to that date, transferred his five shares to the Alba National Bank, and that the latter was the present owner. In October following James Shaw, as successor to Chas. O. Austin, filed an amended petition asking for a judgment in the

sum of $500 against the Alba National Bank as the present owner of the shares of stock, and against Shoemaker as a former owner who had transferred the stock less than a year before the bank's failure. The Alba National Bank, after a general denial, pleaded specially that Shoemaker was the record owner of the stock at the time the bank failed, and that if the stock had been transferred to the defendant bank the transfer occurred less than 12 months before the failure of the First State Bank; that the stock had not been delivered to the First State Bank, or to any of its officers or employees, for transfer; that no such transfer had been entered upon the books of that bank; and for those reasons the defendant, the Alba National Bank, was not liable as the owner of the stock.

In a trial before the court without a jury, judgment was rendered against both Shoemaker and the Alba National Bank. The judgment directed that execution be levied first on the property of the Alba National Bank, and then for any unpaid balance upon property belonging to Shoemaker. From that judgment the Alba National Bank alone has appealed.

The evidence shows that more than a year prior to the failure of the First State Bank Shoemaker owned five shares of its stock. In December next before the closing of the bank on April 7, 1926, Shoemaker sold his stock for a valuable consideration to the Alba National Bank. He signed his name to a blank transfer printed on the back of the certificate, and delivered the certificate to the cashier of the Alba National Bank. That certificate was held by the Alba National Bank as transferee at the time the First State Bank failed. The evidence also shows that the certificate had never been presented to the officers of the state bank in order to have the transfer entered upon its books. Appellant contends that it is not liable as an existing stockholder, because of the failure of Shoemaker to have that transfer entered upon the books of the state bank, or to present the certificate for transfer.

■ Since Shoemaker has not appealed from the judgment rendered against him, the only question is: Did the trial court err in rendering a judgment against the appellant bank as an existing stockholder at the time the state bank failed? Section 16 of article 16 of the Constitution provides: "Each shareholder of such corporate body incorporated in this state, so long as he owns shares therein, and for twelve months after the date of any bona fide transfer thereof; shall be personally liable for all debts of such corporate body existing at the date of such transfer, to an amount additional to the par value of such shares so owned or transferred, equal to the par value of such shares so owned or transferred." Article

535 of the Revised Civil Statutes of 1925 provides: "If default shall be made in the payment of any debt or liability contracted by any bank, savings bank or bank and trust company, each stockholder of such corporation, as long as he owns shares therein, and for twelve months after the date of a transfer thereof, shall be personally liable for all debts of such corporation existing at the date of such transfer, or at the date of such default, to an amount double the par value of such shares."

■ The language used in both the Constitution and the statute makes it plain that the liability imposed upon existing stockholders is against those who are the real owners of the property right represented by the certificates of stock at the time the bank fails. It has been definitely decided in this state that the entry of the transfer on the books of the corporation, where such formality is required, is not necessary to vest the title to the stock in a transferee, if the contract of assignment is otherwise sufficient. Austin v. Marsico (Tex. Com. App.) 281 S. W. 198; Kerr v. Tyler Guaranty State Bank (Tex. Civ. App.) 283 S. W. 601, and cases therein cited; Brooks v. Austin (Tex. Civ. App.) 206 S. W. 723; Chapman, Banking Com'r, v. Sparks (Tex. Civ. App.) 283 S. W. 338.

In the case first cited Judge Short, who wrote the opinion, said: "It is our opinion that the language used by the Legislature in the article last mentioned admits of no other construction than that the real owner, as distinguished from an apparent owner whose name appears on the record of shares of stock in a state bank, is liable for any assessment duly and legally made by the commissioner of insurance and banking under the circumstances of this case, even though such real owner's name never appeared on the books of the bank in any form, and that the very language of the statute protects the defendant in error, Marsico, under the facts found by the trial court and adopted by the Court of Civil Appeals [270 S. W. 1113], from any liability to pay the assessment made by the plaintiff in error, which seems to have been made strictly in accordance with law, and is in such form as would have compelled the defendant in error Marsico to have responded to the demand for the facts pleaded and proven by him, as above stated. According to the terms of this statute, liability depends on actual ownership when the bank suspends, though, of course actual ownership of shares of stock will be presumed to be in the persons whose names appear upon the books of the bank as the owners thereof [citing several cases]. A person in whose name bank stock appears on the books of the bank, while presumed to be the owner of said stock, and while the burden is upon him to show that he does not own the same, yet

when he has properly presented in his answer the facts which will relieve him of the liability, and has sustained the said allegations by proof thereof, he has overcome such presumption and discharged the burden, and is entitled to be protected by virtue of such a situation."

In the second case above referred to Justice McClendon uses the following language: "Under the decisions in this state, however, the indorsement in blank and delivery of a corporation stock certificate passes the legal title to the stock as between the parties to the transfer and as to creditors of the transferor, regardless of whether the transfer has been made on the books of the corporation. Seeligson v. Brown, 61 Tex. 114; Tombler v. Ice Co., 17 Tex. Civ. App. 596, 43 S. W. 896 (writ of error denied); Cotton Oil Co. v. Bank [Tex. Civ. App.] 56 S. W. 552; Bank v. Lumber Co. [30 Tex. Civ. App. 412] 70 S. W. 768." After discussing the basis of the rule adopted in this state, he continues: "The purpose of the requirement that the transfer be made on the books of the corporation, as pointed out in the Seeligson Case, is to protect the corporation, its stockholders and creditors. No right of the corporation, its stockholders, or creditors, however, is here involved. As between the parties to the transfer it is quite clear that the transaction as shown by the uncontradicted testimony evidenced a complete passing of the legal title to Mrs. Moore," etc.

The question here is: Was the Alba National Bank the owner of the stock at the time the First State Bank failed? If it was, there is no escape from its liability under the provisions of our Constitution and statute. It is apparently conceded that the proposition stated in the foregoing excerpts is correct. But it is contended that, in order for that rule to be applied in this case, it was essential to prove that Shoemaker, the transferor, had delivered the certificate of stock to the officers of the First State Bank with the request that the proper record be made on the books of the bank. That might be an essential fact in a proper case, where the transferor was seeking to escape liability on the ground that he had previously assigned his stock. Chapman v. Beeman (Tex. Civ. App.) 265 S. W. 243; Orndorff v. Austin (Tex. Civ. App.) 294 S. W. 681. But such proof is not required in order to establish liability of the transferee.

If the negligent failure of the corporate officials to make the proper entries upon the books of the corporation, after a proper request by the transferor, does not relieve the transferee from liability as an existing stockholder, it is difficult to understand why the failure of the transferor to request such an entry would render the assignment any the less legally effective. If the absence of the proper record of the transfer may be treated as a nonessential, when it is due to the negligence of the corporate officials, there appears to be no good reason why it should be treated otherwise, when due to the negligence of any other party connected with the transfer.

In this case the evidence shows that Shoemaker signed the written transfer and delivered the certificate to one of the officials of the appellant bank. It thus appears that the appellant's officials had it in their power to demand that the record entries be made. By accepting the certificate in that manner, the appellant assumed the duty of doing what was necessary to have the transfer made on the books of the First State Bank. It should not now be permitted to escape liability because of its own dereliction.

The judgment will be affirmed.