### SHAW, Banking Com'r, v. HAILEY.
### No. 2194.

Court of Civil Appeals of Texas. Beaumont.
Feb. 25, 1932.

Rehearing Denied March 2, 1932.

John W. Goodwin, of Austin, for appellant.

Llewellyn & Dougherty, of Liberty, for appellee.

O'QUINN, J.

October 17, 1930, the Farmers' & Merchants' State Bank of Conroe, Tex., failed, and its affairs passed into the hands of James Shaw, banking commissioner of Texas. An assessment of 100 per cent. of the par value of the shares of stock was made by him against the stockholders, for the purposes authorized by the statute. Appellee, Hailey, appeared on the stock book of the insolvent bank as the owner of ten shares of stock. This suit was filed against Hailey to enforce his alleged liability. He answered by general demurrer, general denial, and specially, as follows:

"For further and special answer herein, if such be required, comes now this defendant and says that he is not the owner of any part or number of shares of the capital stock of Farmers & Merchants State Bank; that the facts and circumstances concerning the appearance of defendant's name on the books of said bank as a stockholder therein are as follows:

"On September 26, 1929, and for sometime prior thereto, defendant had been president and a director of First State Bank of Conroe, a banking institution organized and existing under the laws of Texas; that on said date the assets of said First State Bank were assigned, transferred and delivered to Farmers & Merchants State Bank of Conroe, Texas, in consideration of which Farmers & Merchants State Bank assumed the liabilities and obligations of said First State Bank; that in the course of the negotiations leading to said transfer and assignment, defendant was requested by the officers and directors, or some of them, of Farmers & Merchants State Bank to permit his name to be used from and after the date of said transfer as a director of Farmers & Merchants State Bank; that defendant then and there advised said officers and directors that he would be unable to qualify as a director in said Farmers & Merchants State Bank for the reason that he owned no stock in said bank and was financially unable to purchase and pay for the requisite number of shares to permit him to become a director therein; that said officers of said Farmers & Merchants State Bank then proposed to lend to defendant, and place of record in his name the requisite number of shares of stock to enable him to qualify as a director; that upon the earnest insistence and solicitation of said officers and directors defendant agreed to such an arrangement and thereafter his name was added to the list of directors of said bank.

"That this defendant never at any time purchased, or agreed to purchase and pay for any stock whatever in said bank, and no stock was issued to him following such agreement, the placing of his name on the stock register of said bank, if such was done, being without his knowledge or consent and without any agreement or understanding that he should take and pay for such stock. That the lending of his name as a director in said Farmers & Merchants State Bank was wholly for the benefit of said bank and was without consideration moving to the defendant; that he never received any dividends or other emoluments flowing from said stock, and never profited either directly or indirectly through the use of his name as a director of said bank; that had he been required to purchase and pay for said stock as a condition precedent to his becoming a director in said Farmers & Merchants State Bank he would have refused and would have been bound to refuse to become a director therein, or permit his name to be used as one of its directors.

"Defendant would further show unto the court that he is advised and believes and upon such belief alleges the fact to be that the stock register of said Farmers & Merchants State Bank discloses that the ten shares of stock placed in the name of defendant was stock which had been previously issued to one Leo W. Budde; that there was no agreement or understanding had between defendant and the said Budde respecting the transfer of said stock, defendant at no time agreeing to purchase and pay said Budde for said stock; that the actions of the officers and agents of said bank in making said transfer of said stock was not based upon any writing or assignment, by endorsement or otherwise, from

Budde to defendant and was without proper basis in law and was wholly ineffectual to pass title of said shares of stock to defendant."

By supplemental petition, appellant excepted to appellee's answer because it failed to name the deputy commissioner or bank examiner alleged to have knowledge of the arrangement with reference to the stock in question in appellee's name on the stock book, and pleaded that appellee was estopped from claiming that he was not the owner of the stock because on September 28, 1929, ten shares of the capital stock of the bank stood on the books in the name of appellee and so stood up to the date the bank was closed, and ever since, and that said stock was transferred to appellee for the purpose of qualifying him to act as a director of the bank, and that he had held himself out as the owner of said stock, and had permitted the bank to so hold him out, and that, having acquired said stock, he was elected a director of said bank and held said office down to the closing of the bank.

In a trial before the court without a jury, judgment was rendered for appellee, Hailey. From that judgment this appeal was taken.

The court filed the following findings of fact and conclusion of law:

"Findings of Fact.

"I find that Farmers & Merchants State Bank of Conroe is a banking corporation, incorporated under the laws of the State of Texas, on the 16th day of March, 1920, with a capital stock of $65,000.00 divided into shares of the par value of $100.00 each.

"That on the 17th day of November, 1925, Farmers & Merchants State Bank of Conroe, Texas, amended its charter reducing its capital stock to $32,500, divided into shares of the par value of $100.00 each.

"That plaintiff, James Shaw, is the duly appointed, qualified and acting Banking Commissioner of the State of Texas; that Farmers & Merchants State Bank of Conroe is insolvent; that said bank came voluntarily into the hands of plaintiff on October 17th, 1930, for liquidation, and that following such action plaintiff duly and properly levied a 100% assessment against the stockholders of said bank and gave notice of such levy and assessment.

"That ten shares of the capital stock of said Farmers & Merchants State Bank stood on the stock register of said bank in the name of defendant, and that stub No. 109 of the stock certificate book shows the issuance of said ten shares of stock to defendant and his acceptance thereof; that the par value of said ten shares of stock was $1,000.00.

"That the defendant did not in fact own such ten shares of stock, or any part thereof, and had never purchased, or agreed to purchase and pay for same, or any part thereof.

"That defendant refused to pay the assessment of $1000.00 levied against him.

"That defendant was, on September 26th, 1929, and for several years prior thereto, president of the First State Bank of Conroe, Texas, and a director therein; that on said date a part of the assets of said First State Bank were taken over by the Farmers & Merchants State Bank under some sort of purchase agreement, the exact nature of which was not shown, and that the First State Bank thereupon closed its doors and ceased to do a banking business.

"That upon the taking over by the Farmers & Merchants State Bank of the assets of First State Bank, defendant was requested and urged by the president, Thos. S. Falvey, acting for the Farmers & Merchants State Bank, to be and become a director in said bank, stating to defendant that they desired his services in such capacity in order that he might assist them in 'working out' some of the notes taken over by Farmers & Merchants State Bank from First State Bank.

"That defendant stated to said officer of Farmers & Merchants State Bank that he would be unable to qualify as a director therein for the reason he owned no stock in said bank and was financially unable to purchase and pay for the requisite number of shares; that the president of said bank then proposed to lend to defendant ten shares of stock, or arrange for him to borrow ten shares; that defendant shortly thereafter did borrow ten shares of stock from one Leo W. Budde, and such stock was transferred to defendant's name on the stock register of said bank of which defendant had knowledge; that the stock certificate representing said ten shares was never accepted by the defendant, he having instructed the bank to hold said certificate subject to Budde's order.

"That the defendant, with such stock standing of record in his name, qualified, or undertook to qualify, as a director in said Farmers & Merchants State Bank on or about September 28th, 1929, and defendant was thereafter appointed or elected to office of vice-president in said bank, and he continued in that capacity until the closing of said bank October 17th, 1930, but that, except for meeting with the Board of Directors, he took no active part in the management of the bank's affairs. That the officers and directors, or some of them, of said Farmers & Merchants State Bank had actual knowledge of the fact that defendant did not own in his own right the ten shares here sued upon, or any part thereof, but that said stock was loaned to defendant for the purpose above stated.

"That no evidence was offered showing any provision of the bank's by-laws, if any it had, respecting the mode of transfer of its stock.

**"Conclusion of Law.**

"Based on the foregoing facts, I conclude, that as a matter of law the defendant is not liable for the payment of the assessment levied against the stockholders of said bank as respects said ten shares of stock made the basis of this suit."

We adopt the court's findings of fact as our own.

■■ Section 16 of article 16 of the Constitution provides: "Each shareholder of such corporate body incorporated in this state, so long as he owns shares therein, and for twelve months after the date of any bona fide transfer thereof, shall be personally liable for all debts of such corporate body existing at the date of such transfer, to an amount additional to the par value of such shares so owned or transferred, equal to the par value of such shares so owned or transferred."

Article 535, R. S. 1925, as amended by Acts 41st Leg. (1929), 1st Called Sess., c. 60, § 1 (Vernon's Ann. Civ. St. Art. 535), provides: "If default shall be made in the payment of any debt or liability contracted by any bank, savings bank or Bank and Trust Company, each stockholder of such corporation, as long as he owns shares therein, and for twelve months after the date of the transfer thereof, shall be personally liable for all debts of such corporation existing at the date of such transfer, or at the date of such default, to an additional amount equal to the par value of such shares. Shares of stock in such a banking corporation shall be transferable only on the books of the corporation, and it shall be the duty of the officers of the corporation to make such transfer upon the books at the request of the transferror or transferee. In any suit to establish a stockholder's liability on any obligation as stockholder, the transferror and transferee of stock may be joined in one action and the liabilities of both parties determined therein."

Both the Constitution and the statute make it plain that the liability imposed upon existing stockholders is against those who are the actual owners of the property right represented by the certificates of stock at the time the bank fails. Austin v. Marsico (Tex. Com. App.) 281 S. W. 198, 200; Alba National Bank v. Shaw (Tex. Civ. App.) 18 S.W.(2d) 728 (writ refused). The court found that appellee did not own the stock in question at the time the bank failed, and further that he had never purchased, or agreed to purchase and pay for same or any part thereof. The undisputed evidence is, and the court so found, that said stock was loaned to appellee for the purpose only of qualifying him to act as a director. This at the urgent request of the president of the bank at the time of its organization, appellee stating that he would not purchase stock, and refusing to accept same, but specifically instructing the bank to hold the loan-ed stock subject to the order or direction of Budde, the actual owner. The stock was never accepted by appellee, nor was same in his possession. Under these facts, appellee never was a stockholder in the bank, and not liable to any assessment by the commissioner. The officers and directors of the bank knew these facts.

■ In Austin v. Marsico, supra, Judge Short, speaking for the Commission of Appeals, said: "It is our opinion that the language used by the Legislature in the article last mentioned admits of no other construction than that the real owner, as distinguished from an apparent owner whose name appears on the record of shares of stock in a state bank, is liable for any assessment duly and legally made by the commissioner of insurance and banking under the circumstances of this case, even though such real owner's name never appeared on the books of the bank in any form. * * * According to the terms of this statute, liability depends on actual ownership when the bank suspends, though, of course, actual ownership * * * will be presumed to be in the persons whose names appear upon the books of the bank as the owners thereof. * * * A person in whose name bank stock appears on the books of the bank, while presumed to be the owner of said stock, and while the burden is upon him to show he does not own the same, yet when he has properly presented in his answer the facts which will relieve him of the liability, and has sustained the said allegations by proof thereof, he has overcome such presumption, and discharged the burden, and is entitled to be protected by virtue of such a situation."

In the instant case, appellee fully pleaded the fact that he was not and never had been the owner of the bank stock in question, and fully pleaded the facts showing that Leo W. Budde was the real owner of same. This gave to appellant full information of the true ownership of said stock, and it was the duty of the banking commissioner, if he so desired, to have made such actual owner a party defendant to the suit. Appellee had fully pleaded, and had by undisputed evidence proved, his allegations showing that Budde was the real owner of the stock, and thus had overcome the presumption raised by his name appearing on the stock book, that he was the owner of the stock, and gave full information to appellant as to the actual owner of the stock, and thereby relieved himself of any liability in relation to same. See Chapman v. Thomas (Tex. Civ. App.) 283 S. W. 337; Furr v. Chapman (Tex. Com. App.) 286 S. W. 171, 172; Austin v. Gamble (Tex. Civ. App.) 297 S. W. 806; Pace v. Shaw (Tex. Civ. App.) 13 S.W.(2d) 925; Shaw v. Rogers (Tex. Civ. App.) 36 S.W.(2d) 533 (writ dismissed).

In Furr v. Chapman, supra, the commissioner of insurance and banking sued Furr in an effort to enforce his alleged liability as a stockholder in the Breckenridge State Bank, which had failed. Furr denied that he owned the stock alleged. It was shown that he never subscribed for or paid or offered to pay for the stock. The stock purported to represent a portion of an increase of the capital stock of the bank. Furr, when requested by an officer of the bank to take the stock so that he could qualify as a director of the bank, at first demurred but finally agreed to become a director and to accept the certificates of the stock solely for the purpose of enabling him to qualify as a director, and thus his name went on the stock book. In a few days afterwards he discovered the bank was hopelessly insolvent and at once repudiated any and all connection with the bank. Furr asked for an instructed verdict in his favor which was refused, and a verdict directed against him and judgment accordingly entered. Judgment was also against him in the Court of Civil Appeals [1] and the Supreme Court granted a writ of error. The Supreme Court reversed the judgments below and rendered judgment in favor of Furr. In the course of the opinion, Judge Nickels says: "Ownership of 'shares' is the sine qua non of liability." The facts in that case are quite similar to the facts in the instant case, and lack of ownership, or of any promise or act showing that appellee ever subscribed for, bought or promised to pay for the stock or accepted same, entitles him to the protection accorded Furr.

Austin v. Gamble, supra, has many features similar to the instant case. There, too, the party sued was persuaded to allow his stock, actually sold and disposed of, to stand on the stock book in his name that he might act as a director of the bank. In that case, as in this, the sole contention of the banking commissioner was that because the stock book of the bank showed the defendant to be the owner of the stock he was estopped to deny his liability. The Waco court held that stock books of a bank are prima facie evidence of stock ownership, but do not indisputably establish ownership; that the Constitution and statute place the penalties for stock ownership upon the real owners of the stock and not upon the apparent owners, following Furr v. Chapman. In other words, just as in the instant case, where the pleadings and evidence disclose who the actual owner of the stock is, his liability must be looked to for the penalty prescribed.

In Shaw v. Rogers, supra, the Texarkana Court of Civil Appeals, in passing upon the liability of an alleged stockholder, held that a party to whom stock in a state bank was issued, to become a stockholder subject to assessment, must have accepted the stock, and, further, that one to whom stock in a state bank was issued, but which was not accepted, did not become a stockholder subject to assessment. In the instant case the stock attempted to be transferred to appellee was never accepted by him—was never in his possession—but at his express direction was held by the bank for the original owner and holder of the stock, Budde. The undisputed facts show that appellee was never a stockholder in the failed bank and hence not subject to assessment.

But appellant insists that as the stock book of the bank shows the certificate for the stock in question to be in the name of appellee, he is estopped to deny his ownership of said stock, and, therefore, judgment should have been for appellant, and that we should reverse the judgment below and here render judgment for him. In support of this contention, appellant cites Pace v. Shaw (Tex. Com. App.) 29 S.W.(2d) 965; Shaw v. Green (Tex. Civ. App.) 29 S.W.(2d) 818; Chapman v. Pettus (Tex. Civ. App.) 269 S. W. 268; and Heldenfels v. Chapman (Tex. Civ. App.) 283 S. W. 179. In the cited cases there is, we think, a clear distinction from the instant case in the facts, in that in each of the cited cases the parties sued had in fact owned the bank stock and had transferred same without having the transfer appear on the stock certificate book of the bank, while in the instant case the sued party never at any time owned the stock. Under the Constitution and statute a party must be the owner of stock, or must have, within a certain time before the bank failed, owned stock in the bank in order to be liable to assessment. Where one has never at any time owned stock in a failed bank, upon this being properly shown, no assessment against him can be legally made.

The judgment should be, and is, affirmed.